**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| KEVIN BAILEY, Individually and On Behalf of All Others Similarly Situated, | ) ) **Case No.** |
| Plaintiff, | ) ) ) |
| v. | ) **CLASS ACTION COMPLAINT** ) |
| ESPERION THERAPEUTICS, INC., TIMOTHY M. MAYLEBEN and RICHARD B. BARTRAM, | ) **JURY TRIAL DEMANDED** ) ) ) ) |
| Defendants. | ) |

**CLASS ACTION COMPLAINT**

Plaintiff Kevin Bailey ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to itself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through its attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Esperion Therapeutics, Inc. ("Esperion" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Esperion securities between

February 22, 2017 and May 1, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Esperion is a biopharmaceutical company that is primarily focused on the research and development of oral and small molecule therapies for the treatment of patients with elevated levels of low-density lipoprotein cholesterol and other cardio metabolic risk factors. Bempedoic acid and its lead product candidate, the bempedoic acid / ezetimibe combination pill, are targeted therapies focused on reducing elevated LDL-C levels in patients with hypercholesterolemia.  The Company owns the exclude worldwide rights to bempedoic acid.

3.      Founded in January 2008, the Company is headquartered in Ann Arbor, Michigan.  Esperion's stock trades on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "ESPR."

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Esperion's cholesterol-lowering medication, bempedoic acid, entailed serious undisclosed safety risks, including death; and (ii) as a result of the foregoing, Esperion's public statements were materially false and misleading at all relevant times.

5.      On May 2, 2018, Esperion announced results from its second pivotal Phase 3 study for its cholesterol-lowering medication.  Esperion reported that while the trial met the primary endpoint of safety and tolerability and the key efficacy endpoint, there were 13 deaths in the treatment group compared to only two in the control group.

6.      On this news, Esperion's share price fell $24.75, or 35.10%, to close at $45.75 on May 2, 2018.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

10.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). Esperion's principal executive offices are located within this Judicial District.

11.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.      Plaintiff, as set forth in the attached Certification, acquired Esperion securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Esperion is incorporated in Delaware, with principal executive offices located at 3891 Ranchero Drive, Suite 150, Ann Arbor, Michigan 48108.  Esperion's shares trade on the NASDAQ under the ticker symbol "ESPR."

14.     Defendant Timothy M. Mayleben ("Mayleben") has served at all relevant times as the Company's Chief Executive Officer ("CEO"), President and a member of the Board of Directors.

15.     Defendant Richard B. Bartram ("Bartram") has served at all relevant times as the Company's Chief Financial Officer ("CFO"), Principal Accounting Officer and Corporate Secretary.

16.     The Defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

17.     The Individual Defendants possessed the power and authority to control the contents of Esperion's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

4

18.     Esperion Therapeutics, Inc. develops and markets medical devices. The Company produces oral and small molecule therapies for the treatment of patients with elevated levels of low-density lipoprotein cholesterol and other cardio metabolic risk factors.

<u>**Materially False and Misleading Statements Issued During the Class Period**</u>

19.     The Class Period begins on February 22, 2017, when Esperion filed a press release, attached as Exhibit 99.1 to Form 8-K with SEC entitled "Esperion Provides Bempedoic Acid Development Program Update; Reports Fourth Quarter and Full Year 2016 Financial Results," wherein it provided bempedoic acid development program updates.  In the press release, the Company stated in relevant part:

> "Last year, Esperion was focused on building a strong foundation for the development and initiation of our global pivotal Phase 3 clinical development program for bempedoic acid, which the team successfully initiated, including the CLEAR Outcomes cardiovascular outcomes trial," said Tim M. Mayleben, president and chief executive officer of Esperion. "Our focus in 2017 will be on the timely completion of patient enrollment of these LDL-C lowering efficacy studies to enable us to report top-line results by mid-2018. We are encouraged by the early completion of patient enrollment in our long-term safety and tolerability study in January, and remain focused on completing patient enrollment across the remaining global pivotal Phase 3 studies."

**Development Program and Company Highlights**

• November 2016: Publication of the definitive paper on the mechanism of action of bempedoic acid in the journal *Nature Communications*.

• December 2016: Initiation of three global pivotal Phase 3 studies and the **C**holesterol **L**owering via B**E**mpedoic **A**cid, an **A**CL-inhibiting **R**egimen (CLEAR) Outcomes cardiovascular outcomes trial (CVOT) for bempedoic acid.

• January 2017: Early completion of patient enrollment in the global pivotal Phase 3 long-term safety and tolerability study (Study 1) of bempedoic acid.

***

**Bempedoic Acid**

With a targeted mechanism of action, bempedoic acid is a first-in-class, orally available, once-daily ACL inhibitor that reduces cholesterol biosynthesis and lowers elevated levels of LDL-C by up-regulating the LDL receptor, but with

5

reduced potential for muscle-related side effects. Completed Phase 1 and 2 studies in more than 800 patients treated with bempedoic acid have produced clinically relevant LDL-C lowering results of up to 30 percent as monotherapy, approximately 50 percent in combination with ezetimibe, and an incremental 20+ percent when added to stable statin therapy.

20.    On February 22, 2017, Esperion filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2016 (the "2016 10-K").  Esperion reported a net loss of $28.96 million, or $1.29 per diluted share, compared to a net loss of $13.12 million, or $0.58 per diluted share for the same period in the prior year.  For fiscal year 2016, Esperion reported a net loss of $74.98 million, or $3.33 per diluted share, compared to a net loss of $49.78 million, or $2.26 per diluted share for fiscal year 2015.

21.    In the 2016 10-K, the Company stated in relevant part:

The clinical development program for bempedoic acid consists of two major components: 1) the global pivotal Phase 3 LDL-C lowering program in high CVD risk patients with hypercholesterolemia on optimized background lipid-modifying therapy, including maximally tolerated statins, and patients who are only able to tolerate less than the lowest approved daily starting dose of their statin and are considered "statin intolerant," and 2) the global CVOT—known as Cholesterol Lowering via BEmpedoic Acid, an ACL-inhibiting Regimen (CLEAR) Outcomes, in patients with hypercholesterolemia and high CVD risk and who are considered "statin intolerant". The Company initiated the global Phase 3 clinical development program in January 2016, with the 52-week global pivotal Phase 3 long-term safety study (Study 1), and initiated the three remaining global pivotal LDL-C lowering efficacy studies in December 2016. The Company expects to report top-line results from the global Phase 3 program in its entirety by mid-2018, and intends to use the Phase 3 program to support the submission for an LDL-C lowering indication in the U.S. and Europe by the first half of 2019. The Company also initiated the CLEAR Outcomes CVOT in December 2016, and intends to use positive results from this CVOT to support the submissions for a CV risk reduction indication in the U.S. and Europe by 2022.

22.    The 2016 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendant Mayleben stating, in relevant part, that the 2016 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to

make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

23.      On May 4, 2017, Esperion filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 10-Q"). For the quarter, Esperion reported a net loss of $40.54 million, or $1.80 per diluted share, compared to a net loss of $14.59 million, or $0.65 per diluted share for the same period in the prior year.

24.      In the Q1 2017 10-Q, the Company stated in relevant part:

The clinical development program for bempedoic acid consists of two major components: 1) the global pivotal Phase 3 LDL-C lowering program in high CVD risk patients with hypercholesterolemia on optimized background lipid-modifying therapy, including maximally tolerated statins, and patients who are only able to tolerate less than the lowest approved daily starting dose of their statin and are considered statin intolerant, and 2) the global cardiovascular outcomes trial ("CVOT") — known as Cholesterol Lowering via BEmpedoic Acid, an ACL-inhibiting Regimen (CLEAR) Outcomes, in patients with hypercholesterolemia and high CVD risk and who are considered statin intolerant. The Company initiated the global Phase 3 clinical development program in January 2016, with the 52-week global pivotal Phase 3 long-term safety study (Study 1), and initiated the three remaining global pivotal LDL-C lowering efficacy studies in December 2016. The Company expects to report top-line results from the global Phase 3 program in its entirety by mid-2018, and intends to use the Phase 3 program to support the submission for an LDL-C lowering indication in the U.S. and Europe by the first half of 2018. The Company also initiated the CLEAR Outcomes CVOT in December 2016, and intends to use positive results from this CVOT to support the submissions for a CV risk reduction indication in the U.S. and Europe by 2022.

25.      The Q1 2017 10-Q contained signed certifications pursuant to SOX by Defendant Mayleben stating, in relevant part, that the Q1 2017 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

7

26.    On August 8, 2017, Esperion filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2017 (the "Q2 2017 10-Q").  For the quarter, Esperion reported a net loss of $43.34 million, or $1.92 per diluted share compared to a net loss of $14.04 million, or $0.62 per diluted share for the same period in the prior year.

27.    In the Q2 2017 10-Q, the Company stated in relevant part:

The global pivotal Phase 3 clinical development program for bempedoic acid includes four clinical studies in high CVD risk patients with hypercholesterolemia and ASCVD and/or HeFH, or who are high risk primary prevention, on optimized background lipid-modifying therapy and with elevated levels of LDL-C. These patients are on two distinct types of background lipid-modifying therapy: 1) patients on their maximally tolerated statin therapy, and 2) patients only able to tolerate less than the lowest approved daily starting dose, and can be considered stain intolerant. The Company initiated the global pivotal Phase 3 clinical development program in January 2016, and expects to report top-line results for each of the four studies in the second and third quarters of 2018.

The Company intends to use positive results from the Phase 3 bempedoic acid / ezetimibe combination and bempedoic acid programs to support global regulatory submissions for filing tandem LDL-C lowering indications in the U.S. by the first quarter of 2019 and Europe by the first half of 2019.

The Company is also conducting a global cardiovascular outcomes trial ("CVOT") — known as Cholesterol Lowering via BEmpedoic Acid, an ACL-inhibiting Regimen (CLEAR) Outcomes, for bempedoic acid in patients with hypercholesterolemia who are at high risk of CVD and who are only able to tolerate less than the lowest approved starting dose of a statin and can be considered statin intolerant. The Company initiated the CLEAR Outcomes CVOT in December 2016, and intends to use positive results from this CVOT to support submissions for a CV risk reduction indication in the U.S. and Europe by 2022.

28.    The Q2 2017 10-Q contained signed certifications pursuant to SOX by Defendant Mayleben stating, in relevant part, that the Q2 2017 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

29.    On November 7, 2017, Esperion filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2017 (the "Q3 2017 10-Q"). For the quarter, Esperion reported a net loss of $45.22 million, or $1.86 per diluted share compared to a net loss of $17.40 million, or $0.77 per diluted share for the same period in the prior year.

30.    In the Q3 2017 10-Q, the Company stated in relevant part:

The global pivotal Phase 3 clinical development program for bempedoic acid, consisting of four clinical studies, fully enrolled approximately 3,600 high CVD risk patients with hypercholesterolemia and ASCVD and/or HeFH, or who are high risk primary prevention, on optimized background lipid-modifying therapy and with elevated levels of LDL-C. These patients are on two distinct types of background lipid-modifying therapy: 1) patients on their maximally tolerated statin therapy, and 2) patients only able to tolerate less than the lowest approved daily starting dose, and can be considered stain intolerant. The Company initiated the global pivotal Phase 3 clinical development program in January 2016, and expects to report top-line results for each of the four studies in the second and third quarters of 2018.

The Company intends to use positive results from the Phase 3 bempedoic acid / ezetimibe combination pill and bempedoic acid programs to support global regulatory submissions for tandem LDL-C lowering indications in the U.S. by the first quarter of 2019 and in Europe by the second quarter of 2019.

The Company is also conducting a global cardiovascular outcomes trial ("CVOT") — known as **C**holesterol **L**owering via B**E**mpedoic Acid, an **A**CL-inhibiting **R**egimen (CLEAR) Outcomes, for bempedoic acid in patients with hypercholesterolemia and high CVD risk and who are only able to tolerate less than the lowest approved starting dose of a statin and can be considered statin intolerant. The Company initiated the CLEAR Outcomes CVOT in December 2016, and intends to use positive results from this CVOT to support submissions for a CV risk reduction indication in the U.S. and Europe by 2022.

31.    The Q3 2017 10-Q contained signed certifications pursuant to SOX by Defendant Mayleben stating, in relevant part, that the Q3 2017 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

32.     On February 20, 2018, Esperion filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2017 (the "2017 10-K"). For the quarter, Esperion reported a net loss of $37.89 million, or $1.44 per diluted share, compared a net loss of $28.96 million, or $1.29 per diluted share for the same period in the prior year.  For fiscal year 2017, Esperion reported a net loss of $166.99 million, or $6.98 per diluted share, compared to a net loss of $74.98 million, or $3.33 per diluted share for fiscal year 2016.

33.     In the 2017 10-K, the Company stated in relevant part:

The global pivotal Phase 3 clinical development program for bempedoic acid, consisting of four clinical studies, fully enrolled approximately 3,600 high CVD risk patients with hypercholesterolemia and ASCVD and/or HeFH, or who are high CVD risk primary prevention, on optimized background lipid-modifying therapy and with elevated levels of LDL-C. These patients are on two distinct types of background lipid-modifying therapy: 1) patients on their maximally tolerated statin therapy, and 2) patients who are only able to tolerate less than the lowest approved daily starting dose of a statin, and can be considered statin intolerant. In March 2018, we expect to report top-line results from the first of the Phase 3 studies, Study 4 (1002-048). In May 2018, we expect to report top-line results from the 52-week long-term safety study, Study 1 (1002-040), and top-line results from Study 3 (1002-046). In September 2018, top-line results are expected from Study 2 (1002-047).

34.     The 2017 10-K contained signed certifications pursuant to SOX by Defendants Mayleben and Bartram stating, in relevant part, that the 2017 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

35.     On March 7, 2018, Esperion issued a press release entitled "Esperion Announces Positive Top-Line Results from First Pivotal Phase 3 Study of Bempedoic Acid," announcing the results from its first pivotal phase 3 study for the treatment of patients with elevated low density lipoprotein cholesterol (LDL-C). In the press release, the Company stated in part:

In this study, bempedoic acid was observed to be safe and well-tolerated. There were no differences in the occurrence of adverse events (AEs), serious adverse events (SAEs) or muscle-related AEs; and no differences in discontinuations due to AEs or muscle-related AEs between the bempedoic acid group compared to the placebo group. Two patients (1.1 percent) treated with bempedoic acid had elevations in liver function tests (ALT/AST) of greater than three times the upper limit of normal, repeated and confirmed. The cumulative number of patients now treated with bempedoic acid in Phase 2 clinical trials and in Study 4 totals 919. Of these, six patients (0.65 percent) had elevations in liver function tests. This rate of elevations in liver function test is consistent with the rate observed in Phase 2 clinical trials and with all other previously approved oral LDL-C-lowering therapies, including statins and ezetimibe.

36.    The statements referenced in ¶¶ 19-35 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Esperion's cholesterol-lowering medication, bempedoic acid, entailed serious undisclosed safety risks, including death; and (ii) as a result of the foregoing, Esperion's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

37.    On May 2, 2018, Esperion issued a press release entitled "Esperion Announces Positive Top-Line Results from Pivotal Phase 3 Long-Term Safety Study of Bempedoic Acid," announcing the results from its second pivotal Phase 3 study for its cholesterol-lowering medication.  Esperion reported that while the trial met the primary endpoint of safety and tolerability and the key efficacy endpoint, there were 13 deaths in the treatment group compared to only two in the control group.   The press release stated in relevant part:

**Long-Term Safety and Tolerability of Bempedoic Acid over 52 Weeks**

In this 52-week study, bempedoic acid was observed to be safe and well-tolerated. There were no clinically relevant differences between the bempedoic acid and placebo groups in the occurrence of adverse events (AEs) with 78.5 percent and 78.7 percent, respectively; or serious adverse events (SAEs) with 14.5 percent and

14.0 percent, respectively. Discontinuations due to AEs were 10.9 percent and 7.1 percent, respectively for the bempedoic acid and placebo groups; discontinuations due to muscle-related AEs were 2.2 percent and 1.9 percent, respectively in the bempedoic acid and placebo groups. In the study, 0.54 percent of patients treated with bempedoic acid and 0.13 percent of patients in the placebo group had elevations in liver function tests (ALT/AST) of greater than three times the upper limit of normal, repeated and confirmed. The cumulative number of patients now treated with bempedoic acid in Phase 2 and Phase 3 clinical trials totals 2,434. Of these, 0.58 percent had elevations in liver function tests greater than three times the upper limit of normal, repeated and confirmed. This rate of elevations in liver function test is consistent with the rate observed in all other previously approved oral LDL-C-lowering therapies, including statins and ezetimibe.

| Treatment Emergent Adverse Events (AEs) | % (Number) of Patients | |
|---|---|---|
| | Bempedoic Acid N=1,487 | Placebo N=742 |
| Overview of AEs in All Patients (patient incidence) | | |
| Any AE(s) | 78.5% (1167) | 78.7% (584) |
| Serious AE(s) | 14.5% (216) | 14.0% (104) |
| Discontinuation due to AE(s) | 10.9% (162) | 7.1% (53) |
| Fatal Adverse Events – Unrelated to Study Treatment | 0.9% (13) | 0.3% (2) |

Safety Analysis Set Population

38.    On this news, Esperion's share price fell $24.75 or 35.10%, to close at $45.75 on May 2, 2018.

39.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

40.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Esperion securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their

immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Esperion securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Esperion or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Esperion;

- whether the Individual Defendants caused Esperion to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Esperion securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

46.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Esperion  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Esperion securities between the time the Defendants failed to disclose or misrepresented

14

material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

47.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

48.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.


## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

49.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

51.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and

15

other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Esperion securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Esperion securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

52. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Esperion securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Esperion's finances and business prospects.

53. By virtue of their positions at Esperion, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

54. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers

16

and/or directors of Esperion, the Individual Defendants had knowledge of the details of Esperion's internal affairs.

55.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.    Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Esperion.    As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Esperion's businesses, operations, future financial condition and future prospects.    As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Esperion securities was artificially inflated throughout the Class Period.    In ignorance of the adverse facts concerning Esperion's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Esperion securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

56.    During the Class Period, Esperion securities were traded on an active and efficient market.    Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Esperion securities at prices artificially inflated by Defendants' wrongful conduct.    Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.    At the time of the purchases and/or acquisitions by Plaintiff

17

and the Class, the true value of Esperion securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Esperion securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

57.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

59.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60.     During the Class Period, the Individual Defendants participated in the operation and management of Esperion, and conducted and participated, directly and indirectly, in the conduct of Esperion's business affairs. Because of their senior positions, they knew the adverse non-public information about Esperion's misstatement of income and expenses and false financial statements.

61.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to

18

Esperion's financial condition and results of operations, and to correct promptly any public statements issued by Esperion which had become materially false or misleading.

62.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Esperion disseminated in the marketplace during the Class Period concerning Esperion's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Esperion to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Esperion within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Esperion securities.

63.     Each of the Individual Defendants, therefore, acted as a controlling person of Esperion.  By reason of their senior management positions and/or being directors of Esperion, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Esperion to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Esperion and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

64.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Esperion.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 7, 2018

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein

60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Email: peretz@bgandg.com

***Attorneys for Plaintiff***