**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

KEVIN BAILEY,
on behalf of himself,
and all others similarly situated,

     Plaintiffs,

v.                                                                          Case No. 18-11438

ESPERION THERAPEUTICS, INC.,
et al.,

     Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

This is a securities fraud action by a putative class of stock holders of the

Defendant biopharmaceutical company, Esperion Therapeutics, Inc. Pending before the

court is Defendants' Motion to Dismiss the Amended Complaint. (Dkt. #35.) Plaintiffs

filed a response (Dkt. #38), and Defendants filed a reply (Dkt. #39). The court has

reviewed the briefing and concludes that a hearing is unnecessary. _See_ E.D. Mich. LR

7.1(f)(2). For the reasons stated below, the court will grant the motion.

**I. BACKGROUND**

This claim was brought pursuant to Sections 10(b) and 20(a) of the Securities

Exchange Act of 1934, and Rule 10b-5 promulgated thereunder. 15 U.S.C. §§ 78j(b),

78(t)(a); 17 C.F.R. § 240.10b-5. (Dkt. #22.) Defendants are pharmaceutical company

Esperion Therapeutics, Inc. and some of its key officers. (Dkt. #22, PageID 206–08.)

Plaintiffs are those who purchased or acquired Esperion common stock between

February 22, 2017 and May 22, 2018, when, they allege, its price was artificially inflated because of Defendants' materially false and misleading statements and omissions. (*Id.*, PageID 202, 224–52.)

The following facts are taken from Plaintiffs' Amended Complaint. (Dkt. #22.) Esperion is a company singularly focused on researching and developing a drug called bempedoic acid. The hope is that this LDL-cholesterol reducing compound would compete with Lipitor and other statins (a family of drugs that lower LDL-cholesterol). (*Id.*, PageID 202–03, 212.) Bempedoic acid works differently from other statins, and its value hinges largely on it producing fewer side effects than the LDL-cholesterol reducing drugs already on the market. (*Id.*, PageID 203, 213.)  Accordingly, investors are principally concerned with the safety profile of bempedoic acid.

As part of the process to obtain Federal Drug Administration (FDA) approval to market a new drug, Esperion conducted a series of clinical tests on bempedoic acid, as well as a bempedoic acid/ezetimibe combination pill, to prove its safety and efficacy. (*Id.*, PageID 211, 214.) There are three phases to the clinical investigation process, with each phase having progressively refined goals and increased study populations. *See* 21 C.F.R. § 312.21. After these studies are completed, the company sponsoring the drug submits a New Drug Application (NDA) to the FDA for approval. *See* 21 C.F.R. § 314. The purpose of this application process is to "(a) [f]acilitate the approval of drugs shown to be safe and effective; and (b) ensure the disapproval of drugs not shown to be safe and effective." 21 C.F.R. § 314.2.

Esperion conducted its Phase 1 and 2 studies, and it then began its Phase 3 program in January 2016. (Dkt. #22, PageID 215–16.) The class period begins on

February 22, 2017 and ends on May 22, 2018. (*Id.*, PageID 224, 249.) Defendants allege that during this time Esperion "trumpet[ed] bempedoic acid's safety and tolerability" despite "several red flags," and then, in May 2018, "revealed alarming safety results from the Phase 3 clinical trial" causing the share price to drop dramatically. (*Id.*, PageID 204–05, 252.)

## II. STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint "requires more than labels and conclusions," and must allege facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Rule 12(b)(6) acts "to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) (internal citation omitted).

Allegations of fraud are subject to heightened pleading requirements. Under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Specifically, "the complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Ind. State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.,* 583 F.3d 935, 942–43 (6th Cir. 2009)

(internal citation omitted). The Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4(b), contains additional pleading requirements for a securities fraud complaint, which will be identified and discussed below.

### III. DISCUSSION

Plaintiffs' Amended Complaint claims that Esperion violated § 10(b) of the Exchange Act and asserts derivative lability under § 20(a) against some of its officers. To state a § 10(b) claim, Plaintiffs "must allege that the defendants made material misrepresentations or omissions in connection with the sale of a security, that they did so with bad intent (*i.e.*, scienter), that the plaintiffs relied on the misrepresentations or omissions, and that they eventually suffered an economic loss as a result." *Norfolk Cty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 877 F.3d 687, 694 (6th Cir. 2017) (internal citation omitted). Defendants' Motion to Dismiss argues, among other things, that Plaintiffs fail to adequately plead scienter under the PSLRA's heightened pleading requirements.

"In the securities-fraud context, scienter includes a knowing and deliberate intent to manipulate, deceive, or defraud, and recklessness." *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 979 (6th Cir. 2018) (quoting *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1039 (6th Cir. 2016)). Recklessness, in turn, "is defined as highly unreasonable conduct which is an extreme departure from the standards of ordinary care . . . akin to conscious disregard." *Id.* at 980 (internal quotation marks and citation omitted). The PSLRA requires that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

4

In analyzing a motion to dismiss a § 10(b) claim, the court accepts the complaint's factual allegations as true, views the complaint in its entirety, and "take[s] into account plausible opposing inferences." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007). "A strong inference of scienter 'must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" *Doshi*, 823 F.3d at 1039 (quoting *Tellabs, Inc.*, 551 U.S. at 314). The court also considers nine, non-exhaustive factors in determining whether a plaintiff adequately pleaded scienter:

> (1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal reports and external statements on the same subject; (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and (9) the self-interested motivation of defendants in the form of saving their salaries or jobs.

*Id.* at 1039–40 (citing *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2011) (en banc)).

Here, Plaintiffs' theory of scienter is that Esperion knew about safety issues with its product, bempedoic acid, but repeatedly made statements that it was safe. (Dkt. #38, PageID 949–59.) Taking Plaintiffs' allegations in the complaint as true: Esperion knew about two deaths in Phase 2 by mid-2016; in mid-2017, Esperion made changes to its Phase 3 safety protocols because of serious and numerous adverse safety issues; and by late-2017, Esperion knew of deaths in Phase 3 and "out-of-control kidney filtration results." (Dkt. #22, PageID 216.) Esperion, on the other hand, argues that Plaintiffs fail

to allege specific facts giving rise to a strong inference of scienter, providing only "a patchwork of generalized allegations from four confidential informants." (Dkt. #35, PageID 317.) As far as the *Helwig* factors, neither party contends that the fourth, fifth, seventh, and eighth factors are present here; they do not support an inference of scienter. That leaves the first, second, third, sixth, and ninth factors to be analyzed by the court.

The first *Helwig* factor is "insider trading at a suspicious time or in an unusual amount." *Doshi*, 823 F.3d at 1039. Plaintiffs allege that several Defendants "engaged in sizable, suspicious, and unusual sales of their Esperion common stock" during the class period. (Dkt. #22, PageID 204.) Specifically, the complaint identifies sales made by Defendants Goldstein, Janney, Newton, and Vitullo, who all served as directors on Esperion's Board and signed the company's filings with the U.S. Securities and Exchange Commission (SEC). (*Id.*, PageID 253–56.) Esperion argues that Plaintiffs "cherry-picked" these individuals, who are not specifically tied to the alleged fraud or named in the complaint's substantive allegations, because they happened to sell stock during the class period. (Dkt. #35, PageID 320–23.) The two key individual Defendants, CEO Mayleben and CFO Bartram, did not sell their stock during the class period and in fact significantly increased their holdings. (*Id.*)

Plaintiffs do not allege any facts that make the timing or amount of the sales by the four board directors particularly suspicious or unusual. The dates of the sales were spread throughout the class period: March 21 and 22, 2017; December 6, 15, and 18, 2017; January 25, 2018; and March 29, 2018. (Dkt. #22, PageID 253–56.) Nor do Plaintiffs allege any history of these Defendants' trading that would make the size of the

6

sales notable. *See Konkol v. Diebold, Inc.*, 590 F.3d 390, 399 (6th Cir. 2009) (*abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48–50 (2011)). Over the course of the class period, Defendant Goldstein reduced his beneficial ownership of Esperion from 7.7% to less than 1%; Defendant Janney reduced his from 8% to 2.5%; Defendant Newton from 3.7% to 3.2%; and Defendant Vitullo from 10.4% to 4.4%. (Dkt. #22, PageID 253–56.) Meanwhile, Defendant Mayleben, the CEO of Esperion, increased his holdings by 31%, and Defendant Bartram, Esperion's CFO, increased his holdings by 53%. (Dkt. #35, PageID 322.)

This factor does not support an inference of scienter. To the contrary, "[m]any courts have held that the inference of scienter is weak where an officer sells only a small fraction of the shares owned." *In re Credit Acceptance Corp. Secs. Litig.*, 50 F. Supp. 2d 662, 677 (E.D. Mich. April 23, 1999) (collecting cases). Moreover, courts have found "that the CEO and CFO would have been essential participants in any scheme, thus, their having sold no stock, undermines any suggestion of knowledge on the part of defendants due to the other sales." *In re Comshare, Inc. Secs. Litig.*, 1997 WL 1091468, at *10 (E.D. Mich. Sept. 18, 1997). While Plaintiffs cite cases where courts "have declined dismissal simply because defendants claimed increased holdings during the class period," (Dkt. #38, PageID 955), those cases are distinguishable in that—unlike here—the CEO of the corporation was alleged to have sold stock during the class period. *See Willis v. Big Lots, Inc.*, 2016 WL 8199124 (S.D. Ohio Jan. 21, 2016); *Ross v. Abercrombie & Fitch Co.*, 501 F. Supp. 2d 1102 (S.D. Ohio Aug. 9, 2007).

Plaintiffs also argue that *Helwig* factor three, "closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information,"

7

*Doshi*, 823 F.3d at 1039, supports an inference of scienter. (Dkt. #38, PageID 948, 952.) They claim that "Defendants issued their misstatements starting on February 22, 2017, with the last misleading statement issued on April 13, 2018" and that "the revelation of inconsistent information" occurred on May 2, 2018 and May 22, 2018. (*Id.*, PageID 952.) The Sixth Circuit notes that "a 'short turnaround ma[kes] it less likely that the corporation did not know that its statement was misleading." *Dougherty*, 905 F.3d at 981 (quoting *In re Omnicare, Inc. Securities Litigation*, 769 F.3d 455, 484 (6th Cir. 2014)). It has identified a one-week turnaround as close in time but a four-month gap as not close in time. *Id.* (citing *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 684, 687–88 (6th Cir. 2005)). Here, because the issuance of dozens of similar statements over the course of 15 months falls far outside the time range of what constitutes a "short turnaround," this factor also does not weigh in Plaintiffs' favor.

Next, Plaintiffs argue that an inference of scienter is supported by the second and sixth *Helwig* factors: "divergence between internal reports and external statements on the same subject" and "disregard of the most current factual information before making statements." *Doshi*, 823 F.3d at 1039. They contend that because Esperion "received near-contemporaneous information regarding safety issues in the Phase 2 and 3 clinical trials . . . including deaths occurring during the clinical trials," its statements that bempedoic acid was safe and well tolerated were made with scienter. (Dkt. #38, PageID 947–52.) Defendants respond that knowledge of safety events does not equate to acting with "a knowing and deliberate intent to manipulate, deceive, or defraud" or recklessness. (Dkt. #35, PageID 316–320.) Esperion claims that its

8

statements reflected its reasonable and believed interpretation of the clinical trials, the results of which were publicly released. (*Id.*, PageID 324.)

Plaintiffs do not allege specific facts that show, or even suggest, Esperion did not believe what it stated. Esperion explains that the total number of adverse events, including fatalities, was not unexpected given the high-risk nature and medical history of the patient population. (*Id.*, PageID 312.) The cumulative results of the Phase 2 and Phase 3 trials indicated that there was a total of only 16 deaths out of more than 4,000 patients. (Dkt. #22, PageID 249.) Plaintiffs argue that these events were especially troubling because they "had overwhelmingly occurred in the drug group versus the placebo group during the trials," (Dkt. #38, PageID 952), but the disparity in deaths was merely 0.5% in the bempedoic-acid group compared to 0.2% in the placebo group. (Dkt. #22, PageID 249.) More importantly, Plaintiffs do not allege any facts contradicting Esperion's assertion that it was blinded to the data (i.e., did not know which patients experienced the events) until it was released. (Dkt. #35, PageID 310.) Without more, Esperion's knowledge of adverse events in ongoing clinical trials does not strongly suggest that it acted with scienter in stating that bempedoic acid had been viewed as safe and well-tolerated.

Finally, the court looks to *Helwig* factor nine, "the self-interested motivation of defendants in the form of saving their salaries or jobs." *Doshi*, 823 F.3d at 1040. Plaintiffs allege that Esperion's "future depends almost entirely on the successful clinical development, regulatory approval, and commercialization of bempedoic acid" and that "lucrative compensation and bonuses were based on advancing the FDA process." (Dkt. #22, PageID 203, 252.) Esperion characterizes this as a generic motive and

9

argues that it fails to suggest "concrete benefits that could be realized," as required. (Dkt. #35, PageID 320.) The court finds that, as in *Dougherty*, "Plaintiffs' motive allegations are too general and speculative to support an inference of scienter under the ninth *Helwig* factor." *Dougherty*, 905 F.3d at 982. When "the courts distinguish motives common to corporations and executives generally from motives to commit fraud," they note that "an executive's desire to protect his position within a company or increase his compensation" is not a sufficient motive for fraud. *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 690 (6th Cir. 2004) (*abrogated on other grounds by Matrixx*, 563 U.S. at 48–50). Courts recognize that "earnings-based bonuses . . . are common among executives and have limited probative value as to scienter." *City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 865 F. Supp. 2d 811, 835 (W.D. Mich. 2012) (internal citations omitted). The fact that Esperion wanted its key product to be successful, without more, does not raise an inference of fraud. *See In re Omnicare*, 769 F.3d at 484 ("If a well-pleaded complaint can allege only that a corporation intended to defraud based on a desire to continue earning money, without showing a particular link between the actual statement and a specific payment, then the heightened pleading standard for scienter has no bite.")

Reviewing "all the allegations holistically," the court determines that a reasonable person would not "deem the inference of scienter" presented by Plaintiffs as "cogent and at least as compelling" as the opposing inference presented by Defendants. *Matrixx*, 563 U.S. at 48 (quoting *Tellabs, Inc.*, 551 U.S. at 324–25). Plaintiffs' allegations implicate, at most, five of the *Helwig* factors and none of them provide significant support for inferring scienter against Esperion. Having failed to sufficiently plead

10

scienter, Plaintiffs' § 10(b) claim must be dismissed. Consequently, Plaintiffs' derivative claim under § 20(a) against individual officers and directors of Esperion fails and must be dismissed as well. *See Doshi*, 823 F.3d at 1045 (citing *Ind. State Dist. Council of Laborers*, 583 F.3d at 947).

### IV. CONCLUSION

IT IS ORDERED that Defendants' Motion to Dismiss the Amended Complaint (Dkt. #35) is GRANTED.[1]

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  February 19, 2019


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 19, 2019, by electronic and/or ordinary mail.


s/Lisa Wagner
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\18-11438.BAILEY.Dismissal2.docx

---

[1]    In an easily-overlooked final footnote, Plaintiff "seeks leave to amend under Rule 15." (Dkt. #38, PageID 960 n.13.) The proper way to move for such relief is to file a motion. *See* E.D. Mich. LR 15.1. The court deems the footnote "request" to be of no consequence and will not grant Plaintiffs leave to again amend the complaint. "Although [Federal Rule of Civil Procedure] 15 instructs courts to 'freely give leave' to amend, that liberal policy does not apply to the plaintiffs' one-sentence request." *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014); *see also La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010).